(No. 21297.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK MUSIAL *et al.* Plaintiffs in Error.

*Opinion filed June 24, 1932—Rehearing denied October 12, 1932.*

COHEN, TOMAS & COHEN, (GEORGE B. COHEN, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Frank Musial and Adolph Mishalik, plaintiffs in error, (whom we will herein call defendants,) and Stanley Milewski, all of the age of twenty-one years and upward, were convicted by the criminal court of Cook county, without a jury, of the crime of rape. Motions for a new trial and in arrest of judgment were overruled and they were sentenced on November 18, 1931, to imprisonment in the penitentiary for one year. They have sued out this writ of error.

The indictment is in two counts. The first count charges that Frank Musial, Stanley Milewski and Adolph Mishalik on August 8, 1931, in Cook county, Illinois, "then and there being a male person of the age of sixteen years and upwards," did assault, forcibly ravish and carnally know Marion Blas, a female, against her will. The second count charges the commission of the crime against nature. No motion to quash the indictment was made, but it is contended by defendants that the first count of the indictment, on which they were convicted, is fatally defective because it alleges three separate and several acts, and because it does not allege that each of the defendants was of the age of sixteen years. The first count of the indictment is clearly a charge of rape on Marion Blas by the defendants jointly and is not subject to the objection that it charges the crime of rape against each defendant severally. Two or more persons may be jointly indicted and convicted of the crime of rape. (*People* v. *Bogue,* 319 Ill. 294.) It is true that there is no allegation that each of the defendants was of the age of sixteen years when the crime was committed, because, after naming three defendants, the words of the indictment are, "then and there being a male person of the age of sixteen years and upwards." The crime charged is rape by force, against the will of Marion Blas, and it is not necessary in such case for the prosecution to allege in the indictment, or to prove, the ages of the defendants, and any allegation of the ages of the defendants in the indictment may be rejected as surplusage. (*Sutton* v. *People,* 145 Ill. 279; *People* v. *Schultz,* 260 id. 35.) In the case of *People* v. *Trumbley,* 252 Ill. 29, cited and relied upon by the defendants, the charge was not rape by force but was the crime of statutory rape by having sexual intercourse with a female under sixteen years of age.

The testimony of Marion Blas, the prosecuting witness, is in substance as follows: On August 8, 1931, she was seventeen years of age and lived on Wabansia street, in the

city of Chicago, with her parents. At about 9:45 o'clock in the evening on that day she and a girl friend, Cecelia Mack, who lived two doors from witness' home, went to the corner of Wood and Wabansia streets to buy sandwiches. As they walked along the street an automobile followed them and the occupants of the car called to them. The car stopped at the corner on which the sandwich stand was located. Witness thought she recognized one of the men in the car. She stepped up beside the car, looked in and then went back to the sandwich stand. Milewski got out of the car and spoke to her. She told him that she did not know him, and he then took hold of her and shoved her into the front seat of the car. Mishalik was in the car, at the steering wheel. She called to her friend, saying, "Cecelia! Don't leave me alone!" but Cecelia ran away. Musial ran after her but did not catch her. Witness told Milewski that she was going to get out of the car, and he said, "No, you are going to stay right here," and held her by the shoulders. Musial and Mishalik returned to the car. She sat at Mishalik's right, between him and Milewski. Musial sat in the back seat. The car was driven into a dark street and stopped there. Milewski took her out of the front seat and got into the rear seat with her. Musial moved to the front seat. The car was then driven to a gasoline station, where the defendants bought gasoline. They left the gasoline station and drove out into the country. They tried to pour whisky down her throat. Milewski asked her if she knew what she was there for. She said, "No; I want to go home." He said, "We will take you home." After a while he tried to "get funny" with her. She fought with him and screamed. He told her that if she screamed or motioned to anyone he would beat her up. He struck her in the face and held her by the shoulders. The car stopped on a road. After a while Milewski said to Mishalik: "I can't do anything with her; you come back and I will take the wheel." Milewski moved to the front seat, at the steer-

ing wheel, and Mishalik came into the back seat with her. Mishalik, without saying anything, started to "beat her up." Her dress was torn. His trousers were open. He made her spread her feet and had intercourse with her. Later he made her turn around and "put it in" her rectum. He then said to Milewski, "Now is your chance." Milewski then got into the back seat with her and did the same as Mishalik had done. He made her "turn around" also. She fought with him as hard as she could. He was in the back seat with her about fifteen minutes. He got out of the back seat and then Musial came into that seat with her and did the same as the others had done. While Musial was in the back seat with her the car got stuck in a hole in the road at a place where the road was being repaired. The defendants tried to get the car out of the hole or ditch. A car from Joliet with two men, a woman and a baby in it came along. The men in that car assisted the defendants in their efforts to get the car out of the hole but without success. Witness got out of the car. She was crying. One of the men from the Joliet car asked her what was the matter, but she did not tell him why she was crying. Her dress was torn and Milewski put his coat on her. Witness and the three defendants got into the back seat of the Joliet car and the other people got into the front seat of that car. The Joliet car was driven into town and the driver stopped and said, "Here is the place where you can get a street car." The defendants got out of the car and wanted to take witness with them but she would not go. The Joliet people took her to a police station at LaGrange. It was then about 3:00 o'clock in the morning. She told a policeman at the station what had occurred, and in about an hour the defendants were brought to the police station and she identified them as the persons who had attacked her. The policeman took her to a doctor for examination. The Joliet people took her home about 7:00 o'clock that morning. She identified the dress she wore on the night she was with the

defendants and it was introduced in evidence. She testified that before she got into the automobile with the defendants the dress was in perfect condition, that it was torn in her struggle with the defendants, and that it was torn when she got into the car from Joliet.

Material parts of the testimony of the prosecuting witness tending to show the guilt of the defendants were corroborated by five other witnesses for the People, whose names and whose evidence in that regard are as follows:

Cecelia Mack went with Marion Blas on the evening of August 8, 1931, to buy sandwiches. While they were on the corner where the sandwich stand was located the defendants drove up in an automobile. Milewski stepped out of the car and spoke to the prosecuting witness, and she told him that she did not know him. He took her by the shoulders and pushed her into the car. Musial got out of the car and took witness' sandwiches from her and told her she should get into the automobile to get back her sandwiches. After Marion got into the car Musial brought witness' sandwiches to her and told her not to be afraid—that they would take them out for half an hour and bring them right back. Marion asked her to "come along, too." Musial got into the automobile. She walked away and no one followed her.

Lee Heikens was in an automobile with Guy Matthews, his wife and baby, driving south on Mannheim road in Matthews' car. Between 1:00 and 2:00 o'clock in the morning they came upon the defendants' automobile, which had run off the pavement and was stalled. Witness and Matthews tried to pull defendants' car into the road but failed. Defendants then asked to be taken to an elevated station. The prosecuting witness was crying. Her dress was torn and her face was "smeared up like she might have been abused." She said nothing. She and the three defendants got into Matthews' car and were driven to the Hillside police station and thence to LaGrange, where the three defendants got

out of the car and asked Miss Blas to go with them, but she refused. Matthews then drove Miss Blas to the La-Grange police station. Witness saw the dress introduced in evidence on the prosecuting witness that night.

Joe Clegg, a police officer of the village of LaGrange, was on duty at the police station on the morning of August 9, 1931. About 2:30 o'clock A. M. Marion Blas, accompanied by Guy Matthews, his wife and baby and Lee Heikens, came into the police station. Miss Blas had been crying. Her dress was torn—the same dress introduced in evidence. One of her eyes was bruised a little bit. After talking with her he went out and arrested the three defendants and brought them to the police station. She identified them as the men who had raped her. All three defendants denied the charge. Mishalik was very drunk. Milewski said he tried to have intercourse with her but she objected and he did not. Musial said he did not have anything to do with her and did not know whether or not the other defendants did.

Clarence T. Carr, a physician and surgeon of LaGrange, examined the prosecuting witness about 4:00 o'clock on the morning of August 9, 1931. Her face was bruised and swollen "like she had been hit or bumped or struck." Her clothes were practically torn off her. He found her vaginal parts swollen and congested, the labia congested, swollen, irritated and red, and there was a secretion of some sort there all massed together. He did not examine her rectum. Rose M. Reading, a physician connected with the juvenile court of Chicago, examined her on August 18, 1931, and found her private parts in practically the same condition as testified to by Dr. Carr.

It was stipulated by the People and the defendants' counsel that prior to August 8, 1931, the three defendants had had good reputations and had never been arrested before or in trouble; that the attendant at the gasoline station aforesaid would testify, if in court, that defendants

stopped at his station on the night in question, that the prosecuting witness got out of the front seat and into the back seat of the car with Milewski, and that she showed no evidence of fear and was apparently very friendly with the defendants.

The defendants and Milewski testified that the prosecuting witness got into the car with them voluntarily on the night of August 8, 1931. They all denied that they struck or fought with her or tore her dress, and every one of them denied having sexual intercourse with her. They all further stated that all of them, one at a time, were in the back seat of the automobile with her and asked her to have sexual intercourse and that she refused. Milewski and Musial further testified that they had never seen the dress that prosecuting witness introduced in evidence, before the trial.

It is contended by the defendants that the evidence is insufficient to sustain the finding of guilty, and in this connection they urge that the testimony of the prosecuting witness is contradicted in certain particulars by the evidence of Cecelia Mack and is not corroborated. The only part of her evidence contradicted by Miss Mack is her testimony to the effect that Musial ran after Miss Mack when she left the corner where the sandwich stand was located, and the fact whether Miss Mack was or was not so chased is wholly immaterial on the question of the guilt or innocence of the defendants. As a matter of fact, the evidence of the prosecuting witness is strongly corroborated by the other five witnesses who testified for the People, and the testimony of one of the defendants (Musial) and of Milewski corroborates her evidence as to the circumstances of the commission of the rape, which circumstances and the other evidence show clearly that they not only tried to have sexual intercourse with her but did have such intercourse with her forcibly and against her will. The proof shows beyond all reasonable doubt that the prosecuting witness was raped on

that night, and there is no possible theory upon which it could be said that she was raped by any man or men other than the defendants or Milewski, or some one of them, and that they all acted in concert in the commission of the rape and that they are all guilty as charged.

The defendants contend that the evidence does not show that the rape was committed through a concerted or joint action on their part, and they cite and rely upon the case of *People* v. *Richie,* 317 Ill. 551, where it was held that the conviction of two defendants under an indictment charging them jointly with the crime of rape could not be sustained where the evidence showed two separate offenses, one by each defendant, but failed to show concerted action or a common design on the part of the two defendants. In that case the evidence showed that neither of the defendants knew of the commission of the offense by the other defendant.

On the authority of *People* v. *Marx,* 291 Ill. 40, the judgment of the court should be and is affirmed.

*Judgment affirmed.*