The People of the State of Illinois, Plaintiff-Appellee, *v.* Mack Arthur Wilson, Defendant-Appellant.

(No. 70-20; 

Third District—November 30, 1970.

John Donald O'Shea, of East Moline, for appellant.

Walter D. Braud, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Mack Arthur Wilson was convicted in a jury trial of the crime of forcible rape. Defendant did not testify at the trial. There was no direct evidence as to defendant's age. Defendant appeals to this Court contending that his conviction should be reversed because of failure to prove his age. He also raises various other questions relating to evidence admitted during the trial and the closing argument of the prosecutor.

The complaining witness, Beverly Banks, was 17 years of age. She was a senior at Rock Island High School where she had a B-plus grade average. Miss Banks had known defendant Mack Arthur Wilson for about two years but had dated him only once prior to September 5, 1969. On her only date with defendant, she went skating and after the party, they went to Sunset Park where they had kissed. She did not think that defendant was married as no one had ever told her anything to make her suspect he was married.

On the night of September 5, 1969, Beverly Banks left home about 9:00 P.M. with her sister. While they were waiting around Stop and Shop Liquor Store, she had occasion to see defendant although they did not have a date previously arranged. Defendant said that he wanted to see her and asked her to wait. He returned thereafter about 11:00 P.M. They drove to a dance at the "Y" in Moline where they arrived at 11:30 P.M. Defendant went into the dance, and Miss Banks did not, but stayed outside to talk to another girl and with some boys until about 12:00 A.M.

on the morning of September 6, 1969. Defendant returned to the automobile and Miss Banks and defendant left and thereafter stopped at a tavern. Defendant picked up a six-pack of beer. Defendant drank one or two cans of beer. They then stopped at a gas station where defendant visited with a policeman friend. The officer testified that he remembers "kidding" defendant and asking him if that was his wife with him. After they left the gas station, Miss Banks asked defendant if he was going to take her home or back to the dance. Defendant drove past the place where the dance was being held and drove to Hampton Bluffs where he stopped the automobile and talked with Miss Banks. Miss Banks asked defendant to take her home but he refused, saying he had to talk with her. She finally got out of the car saying she was going to walk home. Defendant got out of the car and offered to take her home but when she got back into the car he still said that he wanted to talk. She got out of the car again and defendant got out and grabbed her by the arm and said he would take her home so they got in the car and drove away. As they drove on further, Miss Banks could see that defendant was not taking her home and she got a pair of sharp pointed scissors from her purse. Defendant stopped again on a gravel road and attempted to kiss Miss Banks telling her that he wished to engage in sexual intercourse. Miss Banks opened the door to get out of the automobile and as the defendant reached out to pull her she hit him in the right wrist with the scissors and jumped out of the car. Defendant caught her outside the car and twisted her hand behind her back and took the scissors from her. As another automobile came by, defendant threw Miss Banks into the ditch, twisting her arm, and holding his hand over her face so she could not scream. They got back in the car and defendant made repeated advances trying to force Miss Banks to lie down on the front seat of the car. Miss Banks refused, saying that her religion did not allow her to have intercourse before marriage. Defendant then pushed her down on the front seat with her head under the steering wheel. Miss Banks stated that defendant had her left arm pinned down with his hand and her right arm was pinned down on the seat. While defendant was on top of her, he unzipped Miss Banks slacks and, according to her testimony, defendant penetrated her private parts by going through one of the leg holes of her underpants. Miss Banks testified she was kicking, moving and screaming during all of this time. She also said that at this time she began to bleed a little. There was no evidence of any rips or tears in her clothing, but there was evidence to show the presence of blood on her underpants. Miss Banks testified that prior to September 6, 1969, she was a virgin.

Defendant then brought Miss Banks home. She immediately told her sister what had happened and the family took Beverly to the hospital

where she was checked. Dr. Cunningham, who examined her during the early morning of September 6, 1969, at the hospital, testified that in his opinion she had been penetrated and that this was the first time. The doctor also took vaginal smears to be analyzed. Several people connected with the hospital testified as to the slides with the smears, and over objection. Ruth Jennes testified that she found spermatozoa on the slides. There was a question raised as to the hospital procedures on the smear slides. Deputy DePew testified that he obtained Miss Banks' clothing for examination and that it was sent to the lab. A crime lab technician testified that she examined the clothing for blood and semen and all she found was blood on the underpants.

Miss Banks' parents along with Miss Banks went to find defendant the next morning where he was located at his job pumping gas for a trucking outfit in East Moline. Miss Banks identified defendant and her father then asked defendant if he had taken his daughter out and raped her. Defendant answered by saying, she should keep her "black ass" out of his car. Miss Banks' father told defendant he would get a warrant out for him and defendant said he didn't care as he would be waiting for them when they came. Miss Banks' father also testified that he saw some scratches on defendant's right hand.

During the opening argument in the trial of the cause, defendant's attorney indicated to the jury that he would show that defendant had an alibi. A list of alibi witnesses was furnished to the State but no such witnesses were used during the trial. Defendant did not testify during the trial. The jury found the defendant guilty. His post-trial motion was denied, and he was sentenced to from 4 to 10 years in the Illinois State Penitentiary.

The significant issue in the case was whether or not the State, as part of its case, was required to prove that defendant was above 13 years of age at the time he committed the alleged forcible rape. The Illinois Statute under which defendants was indicted defines forcible rape as "a male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape" (1969 Illinois Revised Statutes, ch. 38 par. 11–1). Defendant contends that the age of the defendant is a necessary element in the State's case which must be proven beyond a reasonable doubt. In any early case of *Sutton v. People*, 145 Ill. 279, the court considered the requirements for rape under common law and stated, at page 285:

"At common law, a boy under fourteen years of age was conclusively presumed incapable of committing a rape, and that strictness is adhered to in some jurisdictions in this country, but it has never been held that, in charging the crime as defined at common law, it was necessary

to aver that the accused was, at the time, of the age of fourteen years or upwards."

The court then went on to say, at page 286, in holding that the averment in the indictment as to defendant's age was surplusage:

"That averment being surplusage, the people were not bound to prove it. *Durham v. People, supra.* If the defendant was in fact under fourteen years of age, and wished to avail himself of that defense, he was bound to prove it. The question would then have arisen as to whether he knew right from wrong, and perhaps as to his physical ability to commit the crime. The prosecution was not called upon in the first instance to introduce any proof whatever as to his age."

While the *Sutton* case was an 1893 case, later Illinois cases have adopted the same rule as to forcible rape. In determining the question relating to age where a statutory rape charge is made, however, a distinction is noted. In *Wistrand v. People* (1904), 213 Ill. 72, a statutory rape was involved. The court determined there that when statutory rape was the crime charged, proof of age of both the victim and the defendant was an essential element of proof, and the court further held that a jury could not determine defendant's age by his appearance alone. It is, therefore, apparent from the *Sutton* and *Wistrand* cases, that there was a distinction between forcible and statutory rape, and that the age of defendant was a requirement or proof by the prosecution in statutory rape, but was a matter of affirmative defense by defendant in forcible rape cases.

Other Illinois cases have followed the *Sutton* case when forcible rape was the crime involved. In *People v. Schultz* (1913), 260 Ill. 35, it was argued that the *Wistrand* case had overruled the *Sutton* case. The court, however, held (at pages 39–40), that there was a distinction between forcible and statutory rape and that this was still the law in Illinois. The court pointed out specifically that the burden of proof as to age of the defendant, if he was underage, would rest upon him. To the same effect is *People v. Musial* (1932), 349 Ill. 516, where this same distinction was held to be the law of Illinois. The court stated (at page 517):

"The crime charged is rape by force, against the will of Marion Blas, and it is not necessary in such case for the prosecution to allege in the indictment, or to prove, the ages of the defendants, and any allegation of the ages of the defendants in the indictment may be rejected as surplusage."

In *People v. Ventura*, 415 Ill. 587, the court confirmed the holding in *People v. Musial* and *People v. Schultz*, to the effect that defendant is required to prove he is underage in forcible rape cases. It is contended by defendant that the new criminal code dealing with forcible rape and statutory rape now makes it necessary for the State to prove age of de-

fendant as an element of its case (1969 Illinois Revised Statutes, ch. 38, par. 11–1). We find nothing in the statute or any construction thereof which would operate to alter the rule that has existed in Illinois for many years. We do not regard *People v. Davis,* 10 Ill.2d 430, as in any manner operating to alter this rule.

■■ While we feel that age was not a necessary element of proof in a forcible rape case, the proof of age in the instant case actually consisted of the fact that (1) defendant drove a car, (2) defendant had met the complaining witness at a dance two years before the alleged rape, thus indicating some maturity on the part of defendant, (3) the fact that defendant was working at a gas station when he was confronted by the victim's father, (4) the testimony of the victim's sister that she knew defendant was married, and (5) the conversation between defendant and the police officer referring to a "wife". While none of these factors was conclusive as to defendant's age, they are strong indications that he was at least 14 years of age.

Another issue in the case is whether the jury was justified in finding beyond a reasonable doubt that the complaining witness was raped by defendant. While none of plaintiff's clothing was ripped or torn off as she fought off her attacker, the evidence clearly indicates that Miss Banks had been physically forced to submit. While proof is necessary that the intercourse was performed forcibly, the evidence shows that Miss Banks used her faculties and physical powers to resist, and that the act of intercourse was forcible and against her will. Dr. Cunningham, who examined Miss Banks shortly after the alleged rape, indicated that she was a virgin and this could be determined by the recent tear in the hymen. The uncontradicted testimony of Miss Banks indicates that the actions of defendant constituted forcible rape.

It is also contended that the court was in error in admitting testimony relative to the wet smear test and blood and semen tests upon the pants of the prosecutrix. The crime laboratory technician testified that she examined the clothing of Beverly Banks and found blood stains on the underpants but no blood or seminal stains on any of the other items of clothing. None of the clothing was introduced into evidence and the testimony of the State's witnesses showed that the clothing was being held by the State at the courthouse at the time of the trial. Ruth Jennes, a laboratory technician, testified that she examined smear slides made by Dr. Cunningham and found semen present. Dr. Cunningham and his nurse testified that they took these slides from the vaginal region of Beverly Banks during the early morning hours after the alleged rape. Defendant argues that there was no proper foundation for such testi-

mony, as to the clothing and the smear slides, as the articles themselves were not brought into court and identified.

■■ The evidence in the record showed the examination of Miss Banks by Dr. Cunningham and his nurse, and followed the progress of the smear slides taken by them up to Ruth Jennes who examined the slides and found semen present. The testimony showed that regular hospital record keeping procedures were followed, and there appears to be no question but that the matters tesified to by Ruth Jennes were based on her own findings on the slides taken from Miss Banks the morning of the alleged rape. Presenting the slides in court would have added nothing to the testimony. It was also shown that Miss Banks turned the clothing she was wearing the night of the alleged rape over to Officer John DePew of the Sheriff's Department. The testimony showed the transfer of possession of the clothes to Salley Dillon of the crime laboratory and she testified as to finding blood on the pants. It was shown that the State still held the clothes for safekeeping and they were in the courthouse during the progress of the trial. Defendant could have obtained them and offered them in evidence himself. We, therefore, feel that there is no error which would justify a reversal as a result of the testimony of the witnesses referred to.

■■ Vigorous objection is made to the prosecutor's closing argument on appeal in this Court. As we have indicated in the statement of facts, during the opening statement, defendant's attorney alluded to the fact that he would show that defendant had an alibi. The prosecutor commented on this in his closing argument but specifically stated defendant had a presumption of innocence, and need not put on a defense if he so chooses and that evidently his counsel decided he would put on no defense. The prosecutor stated, "You should draw nothing from that and I will ask you on behalf of the people that you draw no conclusion that defendant has chosen to put on no defense". The prosecutor also pointed out that certain facts in evidence were uncontradicted and no contradictory evidence was produced in the cause. Thereafter, the prosecutor stated, in apparent reference to the confrontation between the father of the complaining witness and the defendant. "Why didn't you deny the fact? If this didn't happen, why was it not denied at that time. Is that what you would have done? Is that what any normal person would have done when confronted by an irrational father, I am upset, you have raped my daughter. The normal response, there are many normal responses—what are you talking about—I don't understand—who are you—what do you mean—I wasn't there—I don't know what you're talking about". Defendant contends that the remarks of the prosecutor violated the provision of

the Illinois Statute which protects defendant from being required to testify as a witness in any case involving defendant. The courts in Illinois have held that a prosecutor in closing argument may refer to testimony of his own witnesses and point out that their testimony is uncontradicted. He may not comment in a manner that is intended or calculated to direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify. (*People v. Burton*, 44 Ill.2d 53, 254 N.E.2d 527, 528; *People v. Wollenberg*, 37 Ill.2d 480, 487). In the cause before us, the prosecutor was apparently referring to the refusal by defendant to deny the rape when confronted by Miss Banks' father. It was not a reference to his failure to testify at the trial. As stated in *People v. Cozzi*, 364 Ill. 20, at 23:

"An admission may be implied from the conduct of a party charged with crime who remains silent when statements are made in his presence and hearing implicating him in its commission, when the circumstances afford him an opportunity to reply and where a man similarly situated would ordinarily deny the imputation."

While the comments of the prosecutor, in the cause before us, approaches the limits of proper comment, we do not believe that they constitute reversible error.

■■ Similarly, during the closing argument, the prosecutor referred to the incident when the victim's father talked with defendant and questioned him about the rape. The prosecutor then stated the response was that she should never have put a part of her physical being in his car, and thereafter stated that defendant did not say that he did not commit the rape. The State's Attorney also stated that the complaining witness had gone to the office of the State's Attorney, and that is why "you are here today, because Beverly Banks and her father, her family, are entitled to protection, they are entitled to law enforcement just as your mother, sisters, daughter would be so they have come to the right place." Defendant was also referred to as being "hostile" and "vicious". As stated in *People v. Glickman*, 27 Ill.App.2d 379, 385, the general principle which emerges from cases is that counsel should not do or say anything in argument, the only effect of which would be to inflame the passion or arouse the prejudice of the jury against defendant, without throwing any light on the question for decision. The statements of the prosecutor in the cause before us had some basis in the evidence and do not appear to be such statements as would inflame the jury. The reference to the defendant being hostile and vicious was supported by evidence of Miss Banks as to the activities when she was thrown into a ditch, her arm was twisted, and further acts of force in the automobile. The reference to the question of law enforcement, "just as your mother, sisters, daughter

would be", was not such reference as to justify reversal. As stated in *People v. Provo* 409 Ill. 63, 70:

"But the State's Attorney in his argument has a right to dwell upon the evil results of the crime, and to urge a fearless administration of the criminal law and to comment upon the conduct of the accused * * * However, he must refrain from using violent language, making inflammatory remarks and stating his own opinion."

Further question arises as to whether the prosecutor in the closing argument improperly interjected into the argument his own feelings as to defendant's guilt. Here the prosecutor stated, "Now this is just not a young lady stating this, the doctor said 'yes', regardless of what you might think or I might think, and I for one have scrutinized these claims of rape very carefully. Now I would like to just briefly suggest to you that we are getting this statement, this being prejudicial and unfair, this young lady, Beverly Banks underwent a traumatic experience, there is no question in my mind as there is in your mind that it happened and that he did it, Mack Wilson, did it, but she did undergo a traumatic experience." These comments do not appear to be attempts to lead the jury to believe that the prosecutor had some special reason for feeling that defendant in the particular case was guilty. They would not justify a reversal.

■ A further question is raised as to whether the closing argument improperly referred to defendant's failure to establish an alibi defense. The prosecutor mentioned that defense attorney had stated that he would present alibi witnesses and did not. He did not dwell on the matter but merely reminded the jury that there was no evidence to substantiate defendant's attorney's opening remarks. As stated in *People v. Gray,* 57 Ill.App.2d 221, 225:

"The parents were not called to testify, and in the closing argument the State referred to the failure of defendant to bring in the parents of Shirley Jordan. We find no error here. As said in *People v. Gray* (1964), 52 Ill. App.2d 177, 190, 201 N.E.2d 756:

'Where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State.' "

We, therefore, find no reversible error in the commentary and argument of the State's Attorney in this cause.

Since we find no reversible error in the record, the judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Judgment affirmed.

RYAN, P. J., and STOUDER, J., concur.