In re CARL REED et al., Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. CARL REED et al., Respondents-Appellants.)

First District (4th Division)    Nos. 76-802, 76-804 cons.

Opinion filed August 18, 1977.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and William F. Ward, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

In an adjudicatory hearing minor respondents Carl Reed, Derral Scott, and James Howard were found delinquent for having committed the offense of rape. (Ill. Rev. Stat. 1975, ch. 38, par. 11—1.) All three respondents were sentenced to two years' probation. Carl Reed and Derral Scott (respondents) brought this appeal alleging (1) their delinquency was not established beyond a reasonable doubt and (2) the State failed to prove a material element of the offense of rape, that the minor respondents were at least 14 years old at the time of their offenses.

We affirm the findings of delinquency as to both respondents.

The 12-year old complaining witness, Louise (we preserve partial anonymity), testified at the adjudicatory hearing that on September 18, 1975, she was visiting her grandmother in Chicago, having arrived at the home at about 6 or 7 p.m. She played in the vicinity of the house until 11:25 p.m., spending part of the time with respondents. Louise was aware of the specific time because she heard it announced on a playmate's radio. At that time she began playing in the street with respondents, when Scott took her scarf and walked away with it. Louise began to enter her grandmother's house without the scarf but then heard one of the boys cry out "Here go your scarf." From her grandmother's porch Louise looked across the street about two houses down to James Howard's house, where she saw a boy she knew as "Bubba." Louise approached Bubba and asked where her scarf was. When he did not respond she began looking on the ground in the direction of James Howard's garage. As she approached the garage Bubba picked her up and carried her inside. Inside were respondents, James Howard, and two boys she did not know. The lights were off but the garage was illuminated by light from a nearby "carpet place" and by alley lights which shined in through a half-open garage door. Louise began crying and Bubba told her to shut up. Someone whom she could not see began to choke her from behind. She was knocked to the ground, landing on a blanket. With her arms and legs being held, Louise was raped by Bubba, then by an unknown boy, then Derral Scott, then another unknown boy, then James Howard, and last by Carl Reed. The attack caused her to bleed and she wept and screamed while it took place.

Louise was on the ground facing upward with her eyes open during the attacks. She was able to clearly see her attackers' faces. She had known Scott for one to two years and Reed for two years before the incident. She identified them in court as two of her attackers.

As each boy finished his act of intercourse he left the garage. After Carl Reed, her last attacker, left she was momentarily left alone. Then James Howard returned, saying "Why did they do this to you?" He returned the clothes that had been pulled off her. Louise dressed and returned to her grandmother's house, telling her what happened.

Louise's grandmother testified that between 12 and 12:30 that night Louise came into her room and said "Grandmother, Grandmother, I have been raped." Louise was taken to a hospital where Dr. David Coppege examined her at about 2:30 a.m. According to the doctor, her underpants contained about 20 to 30 cubic centimeters of blood and there were two fresh lacerations in the walls of her vagina. The presence of mobile sperm established that sexual intercourse had occurred within 12 hours. The lacerations did not of themselves establish whether the intercourse was forceful because they could have been caused by a merely vigorous sex act.

Respondents Carl Reed and Derral Scott, testifying in their own behalf, recalled playing with Louise earlier that evening, but denied raping her. At about 11 p.m. they had gone to Scott's home. Reed left for 5 to 10 minutes and returned with his clothes in order to spend the night. Derral Scott's mother recalled that Derral and his brother Eric arrived home at about 11 p.m. Fifteen or twenty minutes later Carl Reed arrived to stay the night. The boys went to bed upstairs and she remained up until about 1 or 2 a.m., during which time they never returned downstairs. Eric Scott recalled that respondents were in bed with him by 11:30 p.m. and they slept all night. Carl Reed's parents testified that Carl arrived home about 11 p.m. and stayed for 5 to 15 minutes. His father recalled Carl telling him he was going to spend the night at Derral Scott's home.

James Howard also denied committing the rape. He testified that he arrived home between 10:30 and 11 p.m. At 12 p.m. he went to move his car. He saw someone running from the garage and went to investigate. He discovered Louise crying, her underpants in her hand. Howard asked her "Why did they do something like this to you?" She refused his offer to carry her to her grandmother's house. Contrary to complainant's testimony, Howard testified the door was locked. He unlocked the garage door and let her out. Howard's father confirmed that James Howard was home from 10:30 to 12 p.m. when he left to move his car.

A blanket was recovered from the garage. A police micro-analyst testified that his examination of a section of that blanket did not reveal the presence of blood or semen.

■■ This summary of the evidence establishes that respondents were found delinquent based on proof beyond a reasonable doubt. The complainant was positive in her identification of the respondents as two of her attackers. She had known both of them before that night: Scott for one to two years and Reed for two years. Her testimony established that she had a clear opportunity to observe them during the attack. Such clear and convincing testimony of a complaining witness is sufficient basis for a rape conviction. (*People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154; *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375.) Here complainant's testimony was corroborated by her immediate report on

the rapes to her grandmother (*People v. Sims* (1972), 5 Ill. App. 3d 727, 283 N.E.2d 906), and by the medical examination which disclosed that intercourse had taken place. *People v. Pennington* (1966), 75 Ill. App. 2d 62, 220 N.E.2d 879.

The minor discrepancies alleged by respondents to be in complainant's testimony only go to the weight to be accorded her testimony by the trier of fact. Similarly the alibi testimony of respondents, corroborated by family members, presents questions of credibility to be resolved by the trial court. The court's resolution of those questions was well supported by the evidence and thus will not be disturbed on review. *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.

But respondents also contend that the State failed to prove a material element of the offense of rape: that respondents were at least 14 years of age at the time of the offense.

The rape statute provides in relevant part: "A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. * * *" (Ill. Rev. Stat. 1975, ch. 38, par. 11—1(a).) This is a codification of the common law presumption that a boy under the age of 14 was incapable of committing a rape. (*Sutton v. People* (1893), 145 Ill. 279, 34 N.E. 420.) The statute implicitly provides to a defendant charged with forcible rape the defense that he was under the age of 14 at the time of the offense. The courts of this State have consistently held that a defendant had the "burden of proof" as to this defense. *Sutton v. People* (1893), 145 Ill. 279, 34 N.E.2d 420; *People v. Schultz* (1913), 260 Ill. 35, 102 N.E. 1045; *People v. Musial* (1932), 349 Ill. 516, 182 N.E. 608; *People v. Wilson* (1970), 131 Ill. App. 2d 731, 264 N.E.2d 492; *In re Williams* (1974), 24 Ill. App. 3d 593, 321 N.E.2d 281.

■■ Respondents concede that by Illinois case law such proof need not be made by the State, but they contend that this is contrary to the requirements of the due process clause of the fourteenth amendment. That clause has been construed to require that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068; *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881.) In *Mullaney* the court held that Maine could not constitutionally require a defendant charged with murder to bear the ultimate burden of proof as to having acted in the heat of passion on sudden provocation. Such proof negated the "malice aforethought" element of the Maine murder statute and reduced the offense to manslaughter. Since "malice aforethought" was a fact necessary to constitute the crime of murder, the State was required to prove it. But *Mullaney* has since been limited in application by *Patterson v. New York* (1977), ___ U.S. ___, 53 L. Ed. 2d 281, 97 S. Ct. 2319. That case involved the New York murder statute

which provided that a defendant charged with second degree murder had the ultimate burden of proof as to the affirmative defense of having acted under extreme emotional distress, which would reduce the offense to manslaughter. In a highly technical construction the court held that the statute complied with due process requirements as set out in *Mullaney* because the affirmative defense did not negate any of the elements of the offense of second degree murder. It was in a separate provision providing a defense even though all the elements of second degree murder were established. Thus the State was held to the requirement that it prove all the elements of the offense; the defendant had the ultimate burden of proof as to a defense independent of those elements. The Illinois rape statute does not fit the fact pattern of *Patterson*. The defense involved negates an element of the crime, that the defendant was 14 years or older when he committed the rape. It is not a defense which can be established independent of the elements of the offense. Therefore the *Mullaney* requirement of proof beyond a reasonable doubt by the State does apply to the age provision of the rape statute.

■■ But *Mullaney* only applies to the ultimate burden of proof, also called the burden of persuasion. The opinion specifically recognizes that States could properly impose an initial burden of proof, the burden of raising an issue, on a defendant. (*Mullaney v. Wilbur* (1975), 421 U.S. 684, 701, 44 L. Ed. 2d 508, 521, 95 S. Ct. 1881, 1891.) Illinois is one such State, providing that in order to raise an affirmative defense, unless the State's evidence raises the issue, the defendant must present some evidence as to the issue. Once the defense is raised the State has the ultimate burden of proof as to it, along with the other elements of the offense. (Ill. Rev. Stat. 1975, ch. 38, par. 3—2.) Many of the affirmative defenses are specifically labelled as such by statute. (See, for example, Ill. Rev. Stat. 1975, ch. 38, pars. 6—4 (infancy, insanity, and intoxication or drugged condition), 7—14 (justifiable use of force), 27—2 (truth in criminal defamation).) But in addition to these statutorily designated affirmative defenses, Illinois courts have construed other provisions of the criminal statutes as being affirmative defenses even though not labelled as such. (*People v. Williams* (1962), 23 Ill. 2d 549, 179 N.E.2d 639 (Uniform Narcotic Drug Act, Ill. Rev. Stat. 1957, ch. 38, par. 192.28-39 (repealed 1971); *People v. Williams* (1975), 28 Ill. App. 3d 67, 328 N.E.2d 192 (Ill. Rev. Stat. 1975, ch. 38, par. 24—2); *People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389 (Cannabis Control Act, Ill. Rev. Stat. 1975, ch. 56½, par. 716).) These provisions generally assigned to defendants the "burden of proof" for establishing statutory exemptions from criminal liability. The courts recognized the due process requirements as being affected, and interpreted the provisions to be in the nature of affirmative defenses. Thus the statutory phrase "burden of proof" was construed to mean the burden of going forward with the evidence, so as to place the ultimate burden of

persuasion on the State when the issue was properly raised.

We believe that this is the proper construction to be given to the term "burden of proof" as used in the Illinois cases on forcible rape cited above. In none of those cases was there evidence presented at trial which raised the issue of the defendant's age, so the reviewing courts in those cases were not maintaining that the burden of proof remained with the defendant despite evidence raising the issue. Thus our construction does not conflict with the facts of those cases. It also places those cases in accord with the due process requirements discussed earlier, requirements long recognized in this State. (*People v. Mooney* (1922), 303 Ill. 469, 135 N.E. 776; *People v. Johnson* (1976), 43 Ill. App. 3d 428, 356 N.E.2d 1373.) We conclude that the Illinois forcible rape statute is to be construed as providing a defendant with the affirmative defense that he was under the age of 14 when he committed the rape. If the State's evidence or evidence presented by the defendant raises the issue, then the State must prove the defendant guilty as to this issue along with the other elements of the offense.

In the cause before us there was no evidence presented which indicated that defendants had this defense available to them. Since the issue was not raised by the evidence, the State was not required to prove that respondents were over the age of 14 at the time they committed the offenses at issue.

The order of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.