THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FELIPE SALAS, Defendant-Appellant.

Second District No. 84—0663

Opinion filed November 8, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles Schiedel and James Chadd, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, and Michael Simkin, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

Defendant, Felipe Salas, was charged in a six-count information with committing various sexual offenses against A.M., the 11-year-old daughter on one of his girlfriends. The State elected to proceed first on count V which charged defendant with committing aggravated indecent liberties with a child. (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1(a)) on March 22, 1984. That charge proceeded to a bench trial at which defendant was found guilty of the lesser included offense of indecent liberties with a child. (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1).) The court entered judgment on the finding. The State then elected to try counts IV, VI, and III, which involved an incident that allegedly occurred on July 27, 1983. Count IV charged rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1); count VI charged armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2) based on the predicate felony of indecent liberties with a child; and count III, as amended, charged indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(1)). These charges proceeded to a jury trial at which defendant was found guilty as charged. Judgment was entered on the verdicts. The court thereafter vacated the judgment on count III. The State did not proceed on count I or II. Defendant received three concurrent sentences of imprisonment: 60 years each on the rape and armed violence charges tried by the jury, and 15 years on the charge of indecent liberties tried by the court. Defendant appeals, challenging only the judgments on the rape and armed violence charges. No challenge is made to his conviction of indecent liberties, or his 15-year sentence of imprisonment therefor.

With respect to the judgments on the rape and armed violence charges, defendant has raised numerous contentions of error. We do not find it necessary to address each of those contentions, however, because we conclude that we must reverse the judgments and remand the charges for a new trial based on the erroneous admission into evi-

dence of the details of a complaint A.M. made to the police.

Because defendant has not challenged his conviction of indecent liberties resulting from the bench trial or his 15-year sentence of imprisonment therefor, the facts of that case will not be set out in detail. Basically, the evidence showed that on March 22, 1984, A.M. had sexual intercourse with defendant after he offered to pay her $10.

The evidence presented at the jury trial can be briefly stated. The State called two witnesses: A.M., and investigator Patrick Pender of the Mundelein police department. The defense presented no evidence.

A.M. testified that on July 27, 1983, she was living in Vernon Hills in the basement of a townhouse, with her mother, her 18-year-old brother, Gill, and defendant's 2½-year-old son, Felipe, Jr. Defendant lived there once in a while.

In order to get to the basement apartment, one had to go through the kitchen on the first floor and then down a stairway. When A.M. was asked about the sleeping arrangements in the apartment, she testified that she and Gill slept in the first room, and that most of the time her mother slept with her. A.M. said that the back room was defendant's room, and that he and Felipe, Jr., slept there.

On the night involved here she watched television and then went to sleep. When she went to sleep, defendant and Felipe, Jr., were in the apartment. Her mother had gone to work, and Gill was at a friend's house.

According to A.M., sometime after she fell asleep, defendant woke her up by shaking her. She was wearing pajamas, and he was wearing shorts. He said, "Let's have sex." She said no. Defendant then went to the kitchen and got a knife. He put it up to her neck and said, "You better have sex with me, or I am going to kill you." She was scared so she took off her pajamas. He took off his shorts. He then shoved her onto his bed. Then he got some rope and tied each of her hands separately to the posts of the bed. He then took off his socks and used them to tie each of her feet separately to the bedposts. A.M. testified that defendant then had sexual intercourse with her for about two or three minutes. She said he put his penis about two inches into her vagina, and that it hurt a little.

A.M. stated that defendant stopped having sex with her when they heard Gill enter the townhouse upstairs. Defendant got up and untied her hands and feet. He told her, "If you tell anybody, I am going to kill you."

A.M. identified a photograph of a knife as exactly like the one defendant used to threaten her. There was a set of knives like that at her house. She was not sure whether the knife shown in the photo-

graph ws the same one that defendant used.

Finally, A.M. testified that on March 24, 1984, she told inspectors Pender and Kalodimos "what had happened on July 27th, 1983."

On cross-examination, A.M. testified that while she was being raped, she did not cry out for help although she probably cried a little. She said that Elicia Hernandez, Marguerita Batista, and someone else called Lupe lived upstairs. A.M. said she could not remember whether they were home that night. She testified that throughout the entire incident the knife remained in defendant's hand.

A.M. testified that from the time she and defendant first heard Gill upstairs until the time he entered the basement apartment a minute or two elapsed. When they first heard Gill, her arms and legs were tied to the bed. Her arms were tied with a bow knot. She did not know with what kind of knot her legs were tied. She did not say anything about the rape to Gill when he got home.

A.M. said that the first time she told anyone about the incident was in December of 1983 when she told Hernandez and Batista. Neither of those women called the police. A.M. also told her mother in December, but her mother did not believe her. A.M. testified that defendant lived with her mother and her for about two years and two months. Once in a while defendant would leave for a weekend or three days to go see his daughters.

Investigator Pender testified that on March 24, 1984, he had a conversation with A.M. in the conference room of the Mundelein police department. A.M.'s mother was present during the conversation, and investigator Kalodimos was also present off and on. A.M. told Pender that defendant had raped her. She told him that at about 10:30 p.m. defendant entered her bedroom where she was sleeping. He awakened her and told her to get up and go to his bed in the other room, and to take off her clothes, or he would kill her. A.M. told Pender that she initially refused, but that defendant then held a knife to her throat and made her get out of bed and go to the other room. He made her take her clothes off. A.M. told Pender that defendant then threw her down on the bed, tied her hands to the posts of the headboard with a rope, and tied her feet to the posts of the footboard with his socks. Defendant then engaged in sexual intercourse with her for about one minute until she heard her brother enter the house. A.M. told Pender that at that point defendant stopped the intercourse, untied her, and told her not to say anything to anyone, or he would kill her.

Pender was asked if he had "become personally aware" of defendant, and he replied that he had. Pender was then asked if he

was aware of defendant's age, and Pender replied, "Now, I believe he is 32."

It was based on the evidence recounted above that the jury found defendant guilty of rape and armed violence based on indecent liberties. As we have stated, we are compelled to grant defendant a new trial on the charges of rape and armed violence because of the erroneous admission of Pender's testimony regarding the details of the complaint A.M. made to him. Before discussing that issue, however, we will consider defendant's contention that the State failed to introduce sufficient evidence of his age to prove him guilty beyond a reasonable doubt. This contention must be addressed in order to forestall any risk of subjecting defendant to double jeopardy at a new trial upon remand. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

■■ In order to prove defendant guilty of armed violence, as charged in this case, the State was required to show that, while armed with a dangerous weapon, defendant committed the felony of indecent liberties. (See Ill. Rev. Stat. 1983, ch. 38, par. 33A—2.) The offense of indecent liberties was defined in relevant part, as follows:

> "(a) Any person of the age of 17 years and upwards commits indecent liberties with a child when he or she performs or submits to any of the following acts with a child under the age of 16:
>
> (1) Any act of sexual intercourse ***." (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(1).)

The requirement that the perpetrator be 17 years old or older is a material element of the offense which must be established by the State. (*People v. Lett* (1978), 61 Ill. App. 3d 467, 378 N.E.2d 208.) The offense of rape was defined as follows:

> "A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape." (Ill. Rev. Stat. 1983, ch. 38, par. 11—1.)

The age requirement for the offense of rape, unlike that for indecent liberties, provides the accused with an affirmative defense. The State is required to prove age in a prosecution for rape only where its own evidence or that of the defendant raises the issue. Where the issue is raised, the State must prove the age requirement beyond a reasonable doubt. *In re Reed* (1977), 52 Ill. App. 3d 143, 367 N.E.2d 283; see also *People v. Wilson* (1970), 131 Ill. App. 2d 731, 264 N.E.2d 492.

Defendant notes that investigator Pender was asked if he was

aware of defendant's age, and Pender replied, "Now, I believe he is 32." Defendant maintains that this evidence raised the issue of age insofar as the rape charge was concerned, and required the State to prove it beyond a reasonable doubt. He also maintains that Pender's testimony was the only evidence presented on the age question, and that it was insufficient to meet that standard of proof with respect to both the rape charge and the charge of armed violence based on indecent liberties. He states, "This testimony does not demonstrate how Officer Pender received his information. It does not show whether the opinion is reliable *** ."

The State maintains that it proved beyond a reasonable doubt that defendant was 17 years old or older. It relies on Pender's testimony that he believed defendant was 32 years old, as well as A.M.'s testimony that defendant was her mother's live-in boyfriend, that he had a 2½-year-old son, and that he had other daughters. The State also maintains that insofar as the charge of rape is concerned, it did not raise by its own evidence the affirmative defense based on age.

We agree with the State that defendant was proved to be 17 years old or older. In *People v. Boston* (1977), 52 Ill. App. 3d 18, 367 N.E.2d 383, the defendant was convicted of contributing to the sexual delinquency of a child. On appeal he argued that the State had failed to prove beyond a reasonable doubt that he was of the requisite age of 14 years old or older. The appellate court rejected that contention, noting that evidence had been presented that the defendant had a stepson, and was employed as a painter by a construction company. The court stated that this evidence implied that he was legally old enough to be married and employed. The court also noted that the defendant had been referred to in the testimony as a man. See also *People v. Lett* (1978), 61 Ill. App. 3d 467, 378 N.E.2d 208.

Similarly, in the instant case there was evidence that defendant had been the live-in boyfriend of A.M.'s mother for two years and two months. A.M. was 11 years old. It is highly unlikely that A.M.'s mother would have been living with a 16-year-old boy. Moreover, it was shown that defendant had a 2½-year-old son and other daughters. In addition, Pender testified without objection that he believed defendant was 32 years old, and the jury had an opportunity to observe him at trial. Under these circumstances, there is no reasonable doubt that defendant was 17 years old or older. Because of our conclusion in this regard, we need not discuss defendant's contention that, insofar as the rape charge is concerned, the affirmative defense of insufficient age was raised.

■ Prior to trial defendant filed a motion *in limine*, seeking to

preclude the State from introducing evidence of A.M.'s complaint to Officer Pender. Defendant specifically argued that the details of the complaint were inadmissible hearsay. The trial court denied the motion *in limine,* and admitted Pender's testimony regarding the details of the complaint pursuant to section 115—10 of the Code of Criminal Procedure of 1963. At the time of trial, that statute provided:

"In a prosecution for a sexual act perpetrated upon a child under the age of 12, including but not limited to prosecutions for violations of Sections 11—1 through 11—5 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." Ill. Rev. Stat. 1983, ch. 38, par. 115—10.

The denial of defendant's motion *in limine* in this regard was erroneous. In *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137, and *In re R.D.* (1985), 131 Ill. App. 3d 612, 476 N.E.2d 62, the appellate court held that section 115—10 permits the admission into evidence of only testimony that the complaint was made, and not testimony reiterating the details of the complaint.

The State maintains that the error in admitting the details of the complaint was harmless. In this regard, it notes that the court instructed the jury to consider Pender's testimony only "for the purposes of corroboration of the child's testimony *** and for no other purpose."

There is some support for the State's position. In both *Leamons* and *R.D.* the erroneous admission of the details of the complaint was held to be harmless on the basis that the details were established by the testimony of the complaining witness who was subject to cross-examination. Those cases are, however, factually distinguishable from the instant case. In *Leamons* there was substantial evidence corroborating the complainant's testimony other than the complaint, including medical evidence confirming a sexual act. Similarly, in *R.D.* there was medical evidence which corroborated the testimony of the complaining witness. In *People v. Andino* (1981), 99 Ill. App. 3d 952, 425 N.E.2d 1333, this court held in a deviate sexual assault case that the erroneous admission of the details of a corroborative complaint was not harmless. The court held that the testimony of the complaining witness was clear and convincing, but it noted that there was no sub-

stantial corroborative evidence. Stated the court:

"Where there is no evidence against the defendant except that stemming from the accusation of the victim, there is a danger that the jury's verdict was the result of hearing the victim's version more than once." (99 Ill. App. 3d 952, 957.)

The court distinguished the case on which *Leamons* and *R.D.* relied, *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, as one where there was substantial corroborative evidence. See also *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064.

In the instant case, aside from the complaint to Pender, the details of which were improperly admitted, the State presented no evidence corroborating the testimony of the complaining witness. Under these circumstances, the error was not harmless. Moreover, the court's instruction to the jury that the evidence should be considered only for purposes of corroboration did not cure the error. The convictions in *Andino* were reversed because the jury considered the details of the complaint as corroboration of the testimony of the complaining witness. They are not admissible for that purpose.

 Two additional issues raised by defendant merit comment because they are likely to arise on retrial. The first is defendant's argument that, not only the details of A.M.'s complaint to Pender were inadmissible, but also the fact that the complaint was made was inadmissible because the complaint was not made without inconsistent or unexplained delay. In this regard defendant notes that the hearsay exception set forth in section 115—10 is very similar to the common law hearsay exception for corroborative complaints in rape cases. (See generally *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) That exception, however, has been held to be inapplicable to cases involving sexual offenses against children where consent was not a defense. (See *People v. Hernandez* (1980), 88 Ill. App. 3d 698, 412 N.E.2d 572; but see *People v. Darby* (1978), 58 Ill. App. 3d 294, 374 N.E.2d 229.) In order for a complaint to be admissible under the common law exception, it must have been made without inconsistent or unexplained delay. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) Defendant maintains that because of the similarity of the hearsay exceptions, the statutory exception should be construed to include the "promptness" requirement. He maintains that the purpose of the statute was merely to extend the common law rule to cases involving sexual offenses against minors, and he has cited a portion of the debate in the House of Representatives to support that view. Defendant also contends that if section 115—10 is not construed to include the "promptness" requirement, it would run afoul

of the constitutional right of an accused to confront the witnesses against him. In this regard, he has cited *Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539, for the proposition that statutorily created exceptions to the hearsay rule will not be valid unless they apply to out-of-court declarations with "particularized guarantees of trustworthiness." He maintains that without the "promptness" requirement, the complaint would not have such guarantees.

We disagree with defendant's argument concerning the proper interpretation of section 115—10. In our view that statute does not incorporate the "promptness" requirement of the common law hearsay exception. Accordingly, we need not consider whether A.M.'s complaint was made without inconsistent or unexplained delay.

The primary rule of statutory construction is that the intention of the legislature should be ascertained and given effect. Courts should first look to the statutory language as the best indication of legislative intent, and where that language is unambiguous, courts must enforce the law as enacted without considering other aids to interpretation such as legislative history. (See *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143.) Here, the language of the statute, set forth above, is unambiguous. It clearly states that testimony that the child complained about the sexual act "shall be admitted." No requirement that there be no unexplained delay is set forth, and, therefore, this court should not read such a requirement into the law. It was apparently the intent of the legislature that any delay in making the complaint would affect the weight, rather than the admissibility, of the evidence. As noted in *Damen*, this rule is advocated by Wigmore in his treatise for the common law hearsay exception. *People v. Damen* (1963), 28 Ill. 2d 464, 473.

We are also of opinion that construing section 115—10 in this fashion will not render it unconstitutional. Contrary to defendant's argument, the language from *Ohio v. Roberts* requiring "particularized guarantees of trustworthiness" for statutorily created hearsay exceptions is applicable only where the declarant is unavailable to testify. (*Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539.) Under section 115—10 testimony by the person to whom the child complained is permitted "in order to corroborate the child's testimony." The statute, therefore, requires the child to testify in order for evidence of the complaint to be admitted.

■ In *California v. Green* (1970), 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930, the Supreme Court concluded that prior incon-

sistent statements of a trial witness made out of court could be admitted into evidence against a defendant for the truth of the matter asserted therein without violating his constitutional right of confrontation, at least where the witness testifies at trial about the underlying events and does not claim to have forgotten them. The court did not require that the out-of-court statements have particularized guarantees of trustworthiness, but rather concluded that the "opportunity for cross-examination at trial with respect to both present and past versions of the event" satisfied the requirements of the confrontation clause. (399 U.S. 149, 168, 29 L. Ed. 2d 489, 503, 90 S. Ct. 1930, 1940.) Although *Green* concerned substantive use of prior inconsistent statements, and section 115—10 allows the use of prior consistent statements, we do not believe that this distinction is constitutionally significant. (See *Flewallen v. State* (1977), 267 Ind. 90, 368 N.E.2d 239.) Because complaints are not admissible under section 115—10 unless the child testifies and is subject to cross-examination, we consider that the statute, as construed above, is not unconstitutional, at least where, as here, the child does not claim to have forgotten the underlying incident.

Defendant also maintains that the trial court erred in denying his motion *in limine*, which sought to preclude the State from introducing his prior conviction of indecent liberties to impeach his credibility in the event that he testified. We believe that it is appropriate to leave this issue for resolution at the new trial by the trial judge pursuant to *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. Our supreme court has stated that matters of this nature are addressed to the sound discretion of the trial court. (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.) We express no opinion on this issue.

For the foregoing reasons, we affirm the judgment of conviction of indecent liberties and the 15-year sentence of imprisonment imposed thereon, reverse the judgments of conviction of rape and armed violence, and remand those charges for a new trial.

Affirmed in part, reversed in part, and remanded.

NASH, P.J., and LINDBERG, J., concur.