THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES CREGAR, Defendant-Appellant.

Fourth District Nos. 4—87—0524, 4—87—0525 cons.

Opinion filed August 4, 1988.—Rehearing denied September 1, 1988.

Daniel D. Yuhas and Peter L. Rotskoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a consolidated jury trial, defendant was convicted of three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14) and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16). Subsequently, the trial court sentenced him to concurrent terms of eight years' imprisonment for each of the aggravated criminal sexual assault convictions and three years' imprisonment for the aggravated criminal sexual abuse conviction.

Defendant argues: (1) the trial court erred in cause No. 86—CF—187 by allowing the State to add four additional counts to the indict-

ment; (2) double jeopardy barred his conviction on count III in cause No. 86—CF—187; (3) he was not proved guilty beyond a reasonable doubt; (4) a variance between the date of the offense stated in the information in cause No. 86—CF—159 and the trial evidence denied him a fair trial; (5) the trial court erred in instructing the jury; (6) the trial court erred in admitting details of the corroborative complaint; (7) the trial court erred in excluding evidence; and (8) the cumulative effect of the prosecutor's closing argument denied defendant a fair trial. Additionally, defendant argues the criminal sexual assault statute is unconstitutional because it is not limited to sexual acts performed for gratification or arousal, aggravated criminal sexual assault requires a less culpable mental state than aggravated criminal sexual abuse, and criminal sexual assault is not a lesser included offense of aggravated criminal sexual assault. Defendant also argues and the State concedes that he is entitled to a 126-day credit against his sentence.

We affirm and remand for entry of a credit against his sentence.

It is necessary to review the evidence, keeping in mind the defendant's arguments that he was not proved guilty because complainant contradicted her own testimony about the date when the simulated penises were used and the dates she first and last saw them and the corroborating evidence was insufficient.

The complainant testified that she was 10 years old. Her mother worked at a video rental store in Pontiac. She had moved to Saunemin in May 1986, but had previously lived in Pontiac. Defendant was her baby-sitter when she lived in Pontiac and for a while when she lived in Saunemin. Defendant lived a block away from complainant's Pontiac home. A month after she met defendant, he started baby-sitting her while her mother worked. The previous summer, while she was on vacation in Iowa, she told Candy Hill, a friend of complainant's family, that defendant had abused her. Over objection and a motion for mistrial, complainant stated that she told Hill that defendant put his finger and tongue between her legs and tried to insert a simulated penis into her vagina.

Complainant stated defendant had touched her in "bad places" more than 10 times. He started about a month after she met him. The first time he put his finger between her legs. The last time was the day before he left for Jamaica, July 11, 1986. Prior to trial, the parties stipulated that defendant left O'Hare Airport for Jamaica on July 12, 1986. He returned to O'Hare on July 26, 1986. No one else was at defendant's home when the incidents occurred. The day before defendant left for Jamaica, complainant was in the spare bedroom undressed because she was getting ready to take a bath. Defendant en-

tered the room, told her to be quiet, not to do anything, and to lie on the bed. She could not get up because his hands were on her legs. Defendant knelt on the floor and licked her "privates" for five minutes. Defendant said that if she did not let him he would harm complainant and her mother. Complainant further stated that guns were hanging on the walls of defendant's bedroom. One of the guns was loaded.

Complainant testified further that she stayed overnight with defendant about every weekend. She slept in her bed or his bed. She did not know which bed she slept in more or how many times she had slept in defendant's bed. It was defendant's idea that she stay in his bed with him. She wore pajamas. Defendant was nude some of the times and other times wore underwear. Defendant had put Vaseline on his finger and inserted it into her vagina on more than one occasion prior to the Jamaica trip. On the night of Dawn's accident, defendant showed her some movies, then put Vaseline on his finger, and rubbed between her legs for five minutes. Dawn Gerdes stated that she lives with her father, complainant's mother, and complainant. On June 24, 1986, at 5:15 p.m., she was in an automobile accident. Her brother's name is Brad. Defendant threatened complainant, who believed he would shoot her. Complainant further stated defendant usually gave her a bath in the morning when she stayed overnight. She did not ask him to bathe her.

Complainant further stated Dawn Gerdes is her stepsister. On the night of Dawn's accident, June 24, 1986, defendant baby-sat complainant until late in the evening. She and defendant watched X-rated movies on television. Initially, complainant stated that after she and defendant watched a movie, "he used the dildos."

With respect to People's exhibit No. 4, a simulated plastic penis, she testified:

(a) She last saw exhibit No. 4 July 11, 1986, the day before defendant left for Jamaica.

(b) On June 24, defendant showed her the exhibit but did not touch her with it.

(c) She did not see exhibit No. 4 prior to June 24, 1986, the night of Dawn's accident.

(d) Defendant tried to insert the exhibit into her vagina a couple of months before Dawn's accident, around Easter. No one else was at defendant's home at this time. She thought defendant would kill her. She could not get off of the bed because defendant was holding her legs. Afterward, complainant noticed blood in her underwear.

(e) Complainant did not see the exhibit the day before defendant left for Jamaica.

As to People's exhibit No. 5, a rubber simulated penis, she testified:

(a) She had seen the exhibit before June 24, 1986.

(b) She did not see the exhibit on June 24, 1986.

(c) Defendant tried to insert the exhibit into her vagina before Dawn's accident, June 24.

(d) Before defendant "licked her privates" on July 11, 1986, he tried to insert the exhibit into her.

Complainant further testified that defendant told Judy Koltveit to show complainant her breasts. Defendant pulled Judy's shirt up. Defendant showed her magazines and movies and said that when she turned 12 they could engage in sexual intercourse.

She stated she never put a comb in her vagina nor told defendant that she had. She told classmates that Jim McMahon dated her sister; however, she later told them it was a lie. She did not get along with her mother's boyfriend because he spanked her when she did things which were wrong. She was at defendant's house at times alone and when defendant's wife was there. Complainant's mother had a key and let complainant into defendant's house if defendant was not home. Defendant had a video cassette recorder (VCR) but complainant was not supposed to use it without his help. She knew some of the operating procedures for the VCR but did not completely understand how to operate it.

Complainant denied that Donna Cregar, defendant's wife, found her and Brad Gerdes in defendant's house watching a pornographic movie. Complainant admitted looking through defendant's dresser when he was not home. She saw the simulated penises but did not touch them. Her mother supplied defendant with video movies from work. Her mother would tape the movies for defendant in exchange for his baby-sitting service. Complainant never saw any simulated penises in any of the movies which she saw and did not watch X-rated movies at home. Defendant never pointed a gun at her.

Hill testified complainant visited her in Davenport, Iowa, on July 25, 1986. Complainant told her that a man had been touching her private parts. Complainant was crying at the time.

Michael Bernardini, a special agent for the Illinois State Police, testified that he and Detective Theodore Ores searched defendant's residence on August 18, 1986. They seized two simulated penises. While in defendant's residence, Bernardini observed approximately 15 weapons hanging on the west wall of defendant's bedroom. The weap-

ons were not seized at that time. However, Ores unloaded some of the weapons. On August 28, 1986, when Bernardini returned, the weapons were gone.

Bernardini arrested defendant on August 28, 1986. Defendant told Bernardini he had known complainant and her mother since the summer of 1984. He volunteered to baby-sit for complainant. Defendant and his wife were separated. Defendant's wife did not live at his house but cooked for him. Bernardini stated that defendant said he occasionally bathed complainant because she would not wash herself. Defendant stated that he treated an infection in her vaginal area by spreading Vaseline on it with his fingers. He believed the rash had spread into her vagina so he put Vaseline on his fingers and inserted them into her vagina.

Bernardini further stated defendant told him complainant asked how she could enlarge her breasts. In order to educate her, he placed his hands on her breasts and massaged them. Defendant told Bernardini that complainant would sleep in his bed with him because she was frightened. On August 29, 1986, Bernardini seized weapons from defendant's daughter's home.

Ores' testimony was substantially the same as Bernardini's testimony. Ores stated that defendant admitted he slept in the nude.

Donna Sue Fuss, defendant's daughter, testified that she lived with her father until she was 17. He never assaulted her or abused her. She knew complainant, who was often alone at her father's house. Her husband brought her father's weapons to their house. She bathed herself when she was nine years old.

Koltveit testified that she was a good friend of defendant. She met complainant at defendant's house. On one occasion, defendant asked her to show complainant her breasts because complainant wanted to see where milk came from.

Dr. Pamela Kidd, an obstetrician-gynecologist, examined complainant on August 19, 1986. Complainant was frightened, withdrawn, and uncooperative. Kidd did not find evidence of laceration, black and blue marks, acute trauma, or irritation in complainant's vaginal area. However, complainant's hymenal ring was not intact. This indicated a laceration, trauma, or insertion of an object larger than the original opening, causing tearing. In a nine-year-old, the opening should be the size of a pen or pencil. No trauma had occurred in the last four to five days preceding the examination. However, the area heals very rapidly. If moderate trauma had occurred more than a week before, no evidence would remain.

Kidd testified that People's exhibit No. 4 would cause laceration

of the hymen. The degree of the trauma would depend upon the force with which it were inserted. It was possible to insert a portion of it in a nine-year-old girl's vagina. Kidd further stated that only a small portion of People's exhibit No. 5 could be inserted into a nine-year-old girl's vagina. Insertion of the entire circumference would cause severe trauma. Only pressure would be necessary to insert People's exhibit No. 4. Her physical findings indicated penetration by some object. She could not say how recently the penetration had occurred or what object had penetrated the vagina. Her observations were consistent with insertion of a portion of People's exhibit No. 4.

On cross-examination, Kidd stated it was unlikely the break was self-induced because it would cause pain. She agreed that various toys, household utensils, and combs could cause similar results.

Donna Cregar testified that she was married to defendant but lived separately from him. She visits once a day to cook for him. Defendant lives alone. Donna had been at defendant's house at times when complainant was there. Defendant gave complainant baths. Complainant did not give herself a good bath and would not wash her hair. Complainant was not afraid of defendant and showed affection for him.

Carolyn Howland, defendant's paper carrier, testified that one day in late June 1986, complainant asked Howland to tell Brad Gerdes to leave her alone. Complainant always had children or friends with her at defendant's house. Two or three days before defendant left for Jamaica she overheard complainant's mother ask complainant where she had got some makeup. Complainant's mother told complainant it was too expensive for her to have purchased.

Defendant stated he was 59 years old and had met complainant and her mother 2½ years before the trial, through mutual friends. Complainant was at first afraid of him but got to like him. She would come into his house and ask for water, pop, and candy. Then, she wanted to stay for dinner. She was afraid to stay at her house alone. After three months, defendant and complainant became closer and complainant came to his house a lot. Six months after he met complainant, he had surgery which necessitated an extended convalescence. Complainant's mother asked defendant if he would like to use her VCR and movies. Defendant agreed because he needed the rest. The movies were adult movies with explicit sex. He received 27 tapes from complainant's mother. He never showed complainant any of the adult movies.

Complainant watched movies which she brought from home. Some were R-rated. Defendant was present when complainant watched the

movies because he was restricted to his home because of his health. Complainant operated the VCR and instructed defendant about how to operate it. After defendant returned to work, complainant would come over to his house four to six times a week. Generally, he left the door unlocked. He locked it a few times and gave complainant's mother a key. He gave complainant 30 to 50 baths during the 1½ years he knew her. He noted four times one summer and three or four times the next summer that complainant had a heat or diaper rash in the vaginal area. He applied Vaseline to the outer lips to treat the rash. He treated her rash six or seven times. Defendant initially had complainant sleep in the extra bedroom when she stayed the night. However, she suggested sleeping in his bed with him to cure her bedwetting problem. She did not have any further problem. Although defendant told complainant to sleep in the spare room, when she was frightened she would sleep in his bed. Defendant ordinarily does not wear clothing to bed, but kept a pair of underwear in the headboard of his bed. He put those on when complainant slept in his bed.

A year before trial he and complainant watched a movie about childbirth. Complainant asked a few days later where human milk came from. At that time, he had Koltveit show complainant her breasts. Defendant denied showing complainant his pornographic magazines but kept them hidden in a clothes hamper in the bathroom, where complainant found them. He took them away from her and put them in a dresser drawer in his bedroom. One day he heard complainant and one of her girlfriends upstairs. He found them looking at the magazines so he got rid of the magazines. Complainant thought they were funny. On cross-examination, defendant admitted he got rid of the magazines after the police searched his home.

Defendant stated his weapons were collectibles. Complainant was with him when he hung them on the wall. A clip of bullets fell out of one of the weapons. Since complainant wanted to see what a bullet looked like, defendant showed her. He never threatened complainant with a gun. Defendant denied showing People's exhibit Nos. 4 and 5 to complainant but knew that she had seen them. He had never used, tried to use, or touched complainant with People's exhibit Nos. 4 or 5. On July 11, 1986, at 9:30 a.m., complainant came over and defendant took her to K-Mart. Complainant did not stay the night with him or bathe at his house on that day. Defendant did not place his mouth on her vagina.

Defendant further stated complainant was angry with him because he refused to take her to Jamaica. A few days before his trip,

he and complainant had an argument. Defendant observed complainant wearing jewelry which he had purchased for friends in Jamaica. Some of the cosmetics were missing as well. He confronted complainant, who said a boyfriend had given her the necklace. Complainant had a very bad temper and would have temper tantrums three to four times a week. About a year and one-half before the trip, complainant told defendant that she and another girl had inserted combs inside their vaginas. Defendant stated he never inserted or tried to insert anything into complainant's vagina.

On cross-examination, defendant stated complainant slept in his bed approximately seven times. He was alone with complainant for a short period of time on the morning of July 11, 1986. He rubbed complainant's chest to make her breasts bigger.

Initially, in cause No. 86—CF—187 (4—87—0525) the grand jury returned a two-count indictment alleging defendant had committed aggravated criminal sexual assault in that (1) defendant, who was 17 years old or older, knowingly committed an act of sexual penetration with the complainant who was less than 13 years of age, by placing his tongue in her vagina (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)); and (2) defendant knowingly committed an act of sexual penetration by the use of force by placing his tongue in complainant's vagina (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)). The State added four counts by information. Defendant was convicted of count III, which alleged that defendant committed aggravated criminal sexual assault by virtue of complainant's age by committing an act of sexual penetration by placing his mouth on her vagina. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1).

Defendant argues the addition of counts III through VI constituted an amendment to the indictment which broadened the charged offense by alleging penetration by contact and the threat of force rather than actual use of force and actual penetration of complainant's vagina. Defendant contends the amendment violated his due process and statutory rights to be convicted of the offense for which he was indicted.

■ After an indictment has been returned, the charge contained in the indictment may not be broadened except by the grand jury. (*Stirone v. United States* (1960), 361 U.S. 212, 4 L. Ed. 2d 252, 80 S. Ct. 270.) The broadening of the charge contained in the indictment need not only occur through the amendment process. In *Stirone*, the defendant was charged with a violation of a Federal statute by interfering with interstate shipment of sand. Evidence was presented to the jury that he interfered with the interstate shipment of steel. The

Court found this effectively amended the indictment.

Defendant argues the four additional counts here were in effect amendments to the substance of the charges alleged in the indictment. He argues they were material amendments which denied him his due process rights, relying on *Stirone*. We disagree. The additional counts brought by information were not an amendment of the indictment.

In Illinois, felony prosecutions may be commenced by information or grand jury indictment. (Ill. Const. 1970, art. I, §7; Ill. Rev. Stat. 1987, ch. 38, par. 111—2.) If the prosecution is commenced by information, the defendant must be afforded a preliminary hearing to determine probable cause. (Ill. Rev. Stat. 1985, ch. 38, par. 111—2.) The purpose of both the indictment and the preliminary hearing is to determine probable cause and to avoid prosecutorial abuse. *People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.

However, a finding of no probable cause at a preliminary hearing does not bar a subsequent indictment (*People v. Love* (1985), 139 Ill. App. 3d 104, 486 N.E.2d 1337), as the two charging procedures are not mutually exclusive (see generally *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710). Thus, parallel procedures for the commencement of felony prosecutions exist. After the prosecution is initiated by indictment, the prosecutor may bring additional counts by filing an information. (See generally *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321.) Defendant must be given a prompt probable cause hearing on the additional charges. (*Taylor*, 153 Ill. App. 3d at 725, 506 N.E.2d at 331-32.) In the instant case, the trial court held a preliminary hearing and found probable cause to believe defendant committed the offenses as alleged in counts III through VI of cause No. 86—CF—187. No error occurred in this procedure.

Defendant's reliance upon *Stirone* is misplaced. In *Stirone*, the defendant was not afforded any preliminary determination to establish the substantive validity of the accusation that he violated the Hobbs Act (18 U.S.C. §1951 (1982)) by interfering with interstate shipment of steel. Any person charged with a Federal offense which is punishable by death or imprisonment in a penitentiary has a right to be indicted by a grand jury. (U.S. Const., amend. V; *United States v. Wellington* (9th Cir. 1985), 754 F.2d 1457.) Thus, Stirone's constitutional rights were violated.

However, the Federal guarantee of a grand jury indictment has not been applied to the States. The Federal Constitution does not require an indictment at all on State charges if sufficient notice of the offense charged is given to the accused and he is afforded protection

from invalid accusations. (*Koontz v. Glossa* (6th Cir. 1984), 731 F.2d 365.) Here, defendant was afforded a probable cause hearing on the new counts, which were filed according to the procedure set forth in section 111—2 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 111—2). The new counts were not an amendment of the original indictment.

■ Defendant next argues dismissal with prejudice of counts I, II, and V of the charges in cause No. 86—CF—187 after jeopardy had attached constituted "an acquittal," and double jeopardy concepts operated to preclude trial on the remaining counts. After the jury was impaneled and sworn, but prior to opening argument, the prosecutor moved to nol-pros counts I, II, and V in cause No. 86—CF—187. The court granted the motion.

The Illinois and United States Constitutions provide that no person shall be twice put in jeopardy for the same offense. (Ill. Const. 1970, art. I, §10; U.S. Const., amend. V.) A dismissal of a charge with prejudice bars a subsequent prosecution for the same offense. (*People v. Creek* (1983), 94 Ill. 2d 526, 447 N.E.2d 330; *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121.) Jeopardy attaches in a jury trial when the jury has been impaneled and sworn. *People v. Jackson* (1987), 118 Ill. 2d 179, 514 N.E.2d 983.

In the instant case, jeopardy had attached when the State moved to nol-pros three counts of the charge and the motion was granted. Each count alleged defendant committed the offense by specific actions. The State elected not to proceed to prove that the offense was committed by the method stated in counts I, II, and V. Since the offenses as charged in counts III, IV, and VI were not dismissed, double jeopardy concepts did not bar trial on those counts. See *People v. Fulkerson* (1984), 127 Ill. App. 3d 1084, 469 N.E.2d 1124.

■ Defendant next argues he was not proved guilty beyond a reasonable doubt because complainant contradicted her own testimony about the date when the simulated penises were used and the dates when she first and last saw them, and the corroborating evidence was insufficient. A conviction for aggravated criminal sexual assault or abuse, where the defendant denies the charge, will be upheld when the testimony of complainant is clear and convincing or it is corroborated by other evidence. (*People v. Born* (1987), 156 Ill. App. 3d 584, N.E.2d 1198; *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131.) This is because allegations of sexual misconduct are easily made, hard to prove, and harder to defend. (*Born*, 156 Ill. App. 3d at

589-90, 509 N.E.2d at 128, quoting *People v. Nunes* (1964), 30 Ill. 2d 143, 146, 195 N.E.2d 706, 707.) However, clear and convincing is not synonymous with uncontradicted or unimpeached. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.) Minor variances affect credibility. (*Redman*, 141 Ill. App. 3d 691, 490 N.E.2d 958.) The determination by the trier of fact about the credibility of the complaining witness is entitled to great weight. *Server*, 148 Ill. App. 3d 888, 499 N.E.2d 1019.

In *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 502 N.E.2d 1263, the court held that discrepancies about the date specific activities occurred, where those actions were part of a continuing course of conduct, went to the weight of complainant's testimony. The fact that a minor complainant could not remember the precise date affected her credibility but did not render her testimony unclear or unconvincing. The *Escobedo* court noted the complainant provided a very detailed account of the acts of indecent liberties. See also *People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.

■ In the instant case, complainant described in great detail the actions which occurred on July 11, 1986, and which formed the basis of the conviction in cause No. 86—CF—187. Defendant does not argue her testimony as it pertained to July 11, 1986, was contradicted. Defendant focuses on the fact that complainant first stated defendant used the simulated penises on June 24, 1986. She then contradicted herself and stated defendant had shown her the simulated penises on that date but had not touched her with them. Complainant then stated in detail that between Easter and June 24, 1986, defendant had first attempted to insert the plastic simulated penis into her vagina. Defendant again attempted to insert the plastic simulated penis into her vagina after June 24, 1986, but before July 11. Complainant testified attempts to insert the rubber simulated penis into her vagina occurred before June 24, 1986, and on the day defendant left for Jamaica. Complainant contradicted herself about when she had first seen the simulated penises.

Complainant's testimony was clear and convincing. Discrepancies as to times when she saw the objects and when they were first used go to the weight of her testimony. Complainant's testimony was also corroborated. Hill's testimony that complainant told her of the incidents corroborated complainant's testimony. Additionally, Kidd testified that the medical evidence was consistent with penetration. In the instant case, the complainant's testimony that the charged acts occurred was supported by evidence of a course of conduct between complainant and defendant. Her testimony was also corroborated by

other incidents which occurred between the two. (See *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121; *People v. Esterline* (1987), 159 Ill. App. 3d 164, 512 N.E.2d 358.) Defendant's testimony also corroborated complainant's testimony. He essentially agreed that all actions which did not constitute charged offenses occurred. This helped to establish the intimate relationship between the two and supported complainant's truthfulness.

Defendant next argues a variance between the date alleged in the information in cause No. 86—CF—159 and the date stated at trial denied him a fair trial. Defendant's argument relies upon cases in which a bill of particulars was filed by the State and the evidence varied from the date stated in the bill of particulars. In the instant case, the trial court denied defendant's motion for a bill of particulars as it pertained to a specific date. Defendant does not argue the court abused its discretion in denying his motion.

■ A variance between a criminal complaint and proof at trial will warrant reversal only if the variance is material and of such a nature as to mislead the defendant in preparing his defense or expose him to double jeopardy. (*People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887; *People v. Donnenfeld* (1978), 62 Ill. App. 3d 991, 379 N.E.2d 710.) Generally, the date of the offense is not an essential ingredient in child sex offenses. *Escobedo*, 151 Ill. App. 3d 69, 502 N.E.2d 1263.

■ In the instant case, the information alleged specifically which particular actions were being charged. Defendant did not offer an alibi defense for the date stated in the informations. Since the date was not a material part of the offense charged, and defendant was not prejudiced by proof of the varying date, he was not denied a fair trial by the variance.

Defendant next argues the trial court erred in instructing the jury. Initially, defendant argues evidence of "other crimes" and conduct of a sexual nature between himself and complainant was inadmissible, and the failure of the trial court to give his instruction was error. Defendant then argues that even if the court properly refused his instruction, the court had a duty to instruct the jury on the limited uses of other crimes evidence because it was only minimally probative.

■ Evidence of other offenses may not be admitted to establish a defendant's propensity to commit the offense charged. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) However, evidence of other sexual acts with a complainant in an indecent liberties case is admissible to show the relationship and familiarity of the parties and

to corroborate the complaining witness' testimony concerning the offense charged. (*Esterline*, 159 Ill. App. 3d 164, 512 N.E.2d 358; *Bradley*, 128 Ill. App. 3d 372, 470 N.E.2d 1121.) The evidence is admissible even though the fact that the parties had a continuing relationship or knew each other is not at issue. The evidence shows the intimacy of the relationship. (*People v. Arbuckle* (1979), 75 Ill. App. 3d 826, 393 N.E.2d 1296.) Evidence of the relationship between complainant and defendant was admissible.

Defendant tendered the following instruction.

> "In order to find the Defendant guilty of any of the offenses charged, you must find that he committed each element of such offense beyond a reasonable doubt. You must not find the Defendant guilty of any offense charged on the basis of other conduct occurring at other times. Evidence of such other conduct at other times has been presented to you only for the purpose of attempting to corroborate, by establishing the relationship of the parties, the testimony of [complainant] that the events she testified to on the specific occasions charged took place."

■■ The trial court correctly rejected the instruction because it did not accurately state the law. Generally, it is not necessary for the State to prove the offense occurred on the precise date alleged in the charging instrument. The instruction states that this must be proved. Therefore, the court properly rejected it. After the trial court rejected the instruction, defendant did not tender a new or amended instruction on the limited use of other crimes evidence. A defendant is obligated both to object to particular instructions and to tender proper instructions. Therefore, a failure to tender a proper instruction will result in a waiver of any objection concerning its absence on appeal. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203; *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872.) Defendant waived review of this issue.

■■ Defendant argues the court had an independent duty to instruct on the limited use of the evidence. The Illinois Pattern Jury Instructions provide a limiting instruction which may be given when such evidence is used. (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d).) However, the court is under no independent duty to tender such an instruction. (See *People v. Mullen* (1980), 80 Ill. App. 3d 369, 399 N.E.2d 639 (failure of court to *sua sponte* tender a limiting instruction on other crimes evidence in an indecent liberties cause was not error).) In the instant case, defendant had the primary responsibility to request a limiting

instruction in proper form after his issue-limiting instruction was refused. He did not. Therefore, no error occurred.

■■ Defendant next argues the error in not instructing the jury on the limited use of other crimes evidence was exacerbated by an instruction which stated the State need not prove the offense occurred on the exact date charged. Defendant argues the instruction increased the likelihood he would be convicted of an uncharged offense and was inappropriate because the prosecutor responded during a pretrial argument that June 24, 1986, was the operative date in cause No. 86—CF—159.

Generally, the date alleged in the indictment is not material. It is sufficient if the State proves the offense occurred at any time within the statute of limitations period. (*People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.) An instruction noting this factor is appropriate where no bill of particulars specifying the date has been returned and a variance exists between the evidence and the charged date of the offense. (See IPI Criminal 2d No. 3.01, Committee Notes (2d ed. 1981).) No bill of particulars specifying the date of the offenses was returned here. Therefore, the instruction was proper. It should be noted that the trial court rejected the State's tendered IPI Criminal 2d No. 3.01 instruction because it felt the instruction in the instant case would lead to confusion on the jury's part. The trial court did not err in instructing the jury.

Defendant next argues the trial court committed reversible error in allowing complainant to state details of her corroborative complaint, in allowing Hill to testify that complainant was crying when she told of the incidents, and in not barring the testimony because the complaint was not made in a prompt fashion.

■■ The corroborative complaint statute (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) allows hearsay testimony to be admitted when a child complains of being the victim of sexual misconduct. (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.) The intent of the legislature in adopting this provision was to allow testimony which corroborates the fact that a child under 13 years old made a complaint of sexual abuse. The statute limits the testimony to the fact that a complaint was made. Thus, it is error to identify the defendant or give excessive details of the offense. *Sexton*, 162 Ill. App. 3d 607, 515 N.E.2d 1359; *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.

Though a recitation of the complaint is not admissible, testimony necessarily must include some detail to effectively corroborate the fact of the complaint. *People v. Powell* (1985), 138 Ill. App. 3d 150,

485 N.E.2d 560.

In the instant case, complainant stated she told Hill defendant had inserted his finger into her vagina, fondled her, and used dildos. Under the analysis of *Sexton* and *Server*, naming the defendant was error. However, complainant's statement as to what she complained about was necessary to establish the fact that she had complained of sexual abuse. (*Powell*, 138 Ill. App. 3d 150, 485 N.E.2d 560.) Any error in naming the defendant and in detailing the offense is harmless. Here, complainant testified, was subject to cross-examination, and the testimony properly came in through other testimony of the complainant. (*Server*, 148 Ill. App. 3d 888, 499 N.E.2d 1019.) Additionally, the cases generally dealing with excessive detail in the corroborative complaint situation pertain to the corroborating witness, not the complainant. Hill's testimony did not contain objectionable detail.

Defendant next argues Hill should not have been allowed to state that complainant was crying when she related the incident. The argument has little merit. Complainant's demeanor was relevant to her credibility. The statement was thus admissible.

Defendant asserts this court has held that section 115—10 of the Code codifies the common law prompt complaint rules in rape cases. Therefore, he contends the complaint is inadmissible because it was not prompt. Defendant's assertion is in error. Defendant relies upon *Powell* and *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137. Codification was discussed in both cases only as it pertained to the admission of details of the corroborative complaint. Neither case addressed the promptness argument. In *People v. Goebel* (1987), 161 Ill. App. 3d 113, 514 N.E.2d 60, and *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596, the courts rejected the precise argument raised here. In both cases, the courts noted the statute does not incorporate a promptness requirement, and its plain language should be followed. We find this reasoning sound and adopt it. Any error in complainant's use of defendant's name and in stating details of the offense was harmless.

Defendant next argues the trial court erred in finding a tape-recorded letter from complainant to her imprisoned father was irrelevant and inadmissible. Prior to trial, the State filed a motion *in limine* to preclude admission of the tape. Defendant argued the tape was relevant because it showed complainant had a deeply troubled psyche which would tend to prove she would fabricate the instant allegations. The trial court found the tape was irrelevant and inadmissible. The court noted the tape did not show complainant was emotion-

ally disturbed. Additionally, the tape was of a poor quality with several erasures and often inaudible.

Defendant's argument has little merit. Evidence is relevant if it tends to make an issue more or less probable. A trial court may reject offered evidence as irrelevant if it has little probative value due to its remoteness, uncertainty, or the possibility of unfair prejudice. The admission of the evidence is within the sound discretion of the trial court. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) While wide latitude is allowed to show that a witness is biased or has a motive to testify falsely, examination in this area must be direct and probative. *Ward*, 101 Ill. 2d 443, 463 N.E.2d 696.

In the instant case, the taped letter showed complainant was upset that her mother was living with a new boyfriend, upset that her father was in prison, and was having trouble with school. The trial court's assessment that it did not show a "deeply troubled psyche" and was irrelevant was not an abuse of discretion.

 Defendant next argues several comments in the prosecutor's closing argument and one comment in opening statement deprived him of a fair trial. Defendant asks this court to consider the comments individually and to consider their cumulative impact. Attorneys are allowed broad latitude in closing argument in drawing reasonable inferences and conclusions from the evidence. This includes comments about the nature of the offense and the character of the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. McCoy* (1987), 156 Ill. App. 3d 194, 509 N.E.2d 567; *People v. Smith* (1987), 154 Ill. App. 3d 837, 507 N.E.2d 543.) Reference to a defendant's sexual conduct if supported by the record is legitimate argument. The prosecutor may dwell on the evil results of crime, urge fearless enforcement of the law, and comment on the conduct of the accused. He may not use violent language, make inflammatory remarks, or state his own opinion. It is impermissible to argue matters not in evidence. It is also impermissible to attack defense counsel. (*People v. Fletcher* (1987), 156 Ill. App. 3d 405, 509 N.E.2d 625.) Invited remarks, which are not prejudicial, do not constitute error. (*People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 291.) Failure to object at trial to improper argument waives review of the alleged error. (*Lyles*, 106 Ill. 2d 373, 478 N.E.2d 291; *People v. Jarnagan* (1987), 154 Ill. App. 3d 187, 506 N.E.2d 715.) Additionally, the trial court by sustaining an objection to improper argument and instructing the jury to disregard the comment can cure error. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.) A reviewing court should assess

the argument of counsel in context and sustain the conviction unless it appears improper argument substantially prejudiced the accused. *Fletcher*, 156 Ill. App. 3d 405, 509 N.E.2d 625.

We have carefully examined defendant's allegations of error in the context of closing argument. We note the trial court carefully controlled the argument by correctly sustaining defendant's objections to improper comments. The court also instructed the jury to disregard those comments. Defendant did not object to other comments, one of which was invited error. Any impropriety in the argument did not substantially prejudice the right of the accused to a fair trial.

■■■ Defendant next argues the criminal sexual assault and aggravated criminal sexual assault statutes are unconstitutional. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13, 12—14.) Defendant raises these arguments for the first time on appeal. Generally, questions of constitutionality of a statute cannot be raised for the first time on appeal, but must have been presented to the trial court. (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 498 N.E.2d 262; *People v. Williams* (1986), 142 Ill. App. 3d 858, 494 N.E.2d 525.) Defendant has waived review of these issues. We note, however, defendant's arguments have been rejected by the courts in *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45, *People v. Bartay* (1986), 150 Ill. App. 3d 130, 501 N.E.2d 364, and *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 497 N.E.2d 1212. Under the circumstances presented here, we need not review the issues further.

■■■ Defendant next argues, and the State concedes, that he is entitled to a 126-day credit against his fine. The record shows defendant was in custody for a total of 126 days prior to his sentencing. The judgment on sentence does not reflect the credit. Defendant is, therefore, entitled to a 126-day credit against his sentence. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—7(b).

For the above reasons, we affirm defendant's convictions and sentence and remand for entry of a 126-day credit against his sentence.

Affirmed and remanded.

LUND and KNECHT, JJ., concur.